Thank you, your honor. May it please the court. My name is Dale Campbell and I represent the petitioner Morning Star Packing Company. Thank you for this opportunity to address the issues. Let me talk to the courtroom deputy for just a minute. Could you start the clock, please? There we go. Okay. All right. Thank you, your honor. I would like to reserve at this time five minutes for rebuttal. Okay, keep your eye on the clock. We'll try to help. I understand. Thank you, your honor. We believe that the district court erred primarily in two areas. First is that the court drew improper inferences from the facts that were submitted with respect to the conspiracy and also that the court improperly inferred that there was two separate and distinct conspiracies instead of one overarching conspiracy. I'd like to first address the conspiracy to violate RICO. The essential nature and scope of the conspiracy that was alleged and submitted facts on was to conduct unlawful activities to manipulate the significant ill-gotten gain at the expense of and to injure their largest competitor, who is my client, the Morning Star Company. Now, when you say RICO conspiracy, are you including in there not only the bribery but also the price fixing, the bid fixing? Yes, your honor. As I will submit, the issue of whether there is one conspiracy or two conspiracies is an issue of fact for the jury to decide. And that is our second point. The first point is the RICO conspiracy, the essential nature and scope was to engage in a variety of illegal activities for the purpose of manipulating the tomato market to the participant's gain and to my client's methods or tools by which they implemented that essential nature and scope was through bid rigging, through market exclusion, through bribery, and through price fixing. And so the goal was to control the market and to harm my client. How long before they entered into the, I'll call it the price fixing conspiracy, did the bribery by SK Products start? Okay, SK had been engaged in bribery, I believe, for approximately 10 to 13 years. And the important fact for the court to appreciate is that that was exactly one of the reasons why the defendant, in this case, Mr. Stuart Wolf, approached Ingomar. The fact that the bribery had been ongoing does not reflect that it cannot be a tool utilized by the illegal enterprise to further the enterprise's conduct. In fact, as the facts that we submitted would indicate, is that Mr. Wolf was the one who decided to form the CTAG, that's California Tomato Export Group Conspiracy, that the purpose was they needed to obtain sufficient market power to overcome the market power of the Morningstar Company. Yes. The argument that the opposing counsel makes, if I understand it correctly, is that there wasn't a genuine issue of material fact that Los Gatos intended bribing to be involved in a bribing endeavor. And in fact, there wasn't evidence that bribing was benefiting the conspiracy, it was just something that was helping out SK. Well, what's the best evidence that Los Gatos wanted or intended to participate in a bribing conspiracy? Thank you, Your Honor. I will go to that. At first, I would ask that the court to remember the provision of the Christensen case, where it indicates that a co-conspirator need not know of all of the wrongful acts by the co-conspirator. But Judge Ikuda, let me address your questions directly. Number one, Mr. Wolf knew that Scott Sawyer and SK Foods had been bribing customers. He approached the person, Mr. Rahal, who was doing the work, said, I know you have been bribing customers. The district courts didn't seem to think there was an issue about whether Los Gatos knew that SK was involved in bribing. The point that the district court seemed to focus on was whether Los Gatos intended to participate in the bribery. And also, just more generally, I guess the question I have is, there didn't seem to be evidence that the bribery was anyone but SK. I mean, it seems sort of counter to the CTEG price-fixing conspiracy. Yes, Your Honor. And the issue is, Mr. Sawyer, when he joined the conspiracy, knew that he only would gain advantage through the domestic aspect of it. The defendants wanted to obtain the benefit from the foreign product. Mr. Sawyer would not have stayed in the conspiracy if they had not engaged in the price-fixing, market exclusion, and bid rigging. And where you see the bid rigging and market exclusion being critical, if that had not happened, the defendants would not have gained $7.5 million of profit during the years 2006 through 2008 through the export market. Mr. Sawyer and the entree to that market would have been gone. But one of the direct involvements by the defendants in the bribery was, Sawyer was bribing, for example, Kraft Foods. And the evidence was submitted that Mr. Sawyer asked, and the defendants agreed to submit a false bid to Frito-Lay, or excuse me, to Kraft in order to bolster his bribed prices, to make that bribed price look legitimate. And then the defendants did do that. Was there any evidence that any of the bribe money either came from Mr. Wohl for Los Gatos? No, there is no evidence of that. And we, I'm sorry. Was there any evidence that Los Gatos increased its market share as a result of the bribery scheme? As a result, as a result of Mr. Sawyer participating in the overall conspiracy, yes, because the bribery was a part of the conspiracy that was engaged by SK Foods to control the market to exclude Morningstar. And he would not have participated in the conspiracy absent that involvement. And it was only through his involvement in the conspiracy and the defendants knowing of the bribery and participating in the bribery. Sorry, participating in the bribery? I know of one thing, participating is quite another. I would say participating to the extent that it facilitated. It facilitated the part of the bribery to do the market exclusion. Mr. Wohl created the agreement that you will keep your clients, we will keep our clients. And he indicated he created a matrix where there was an agreement to divide the market amongst them. It included the bribed victims. It also included Wohl transmitting false bids to Kraft in order to look, make SK Foods bribed prices look legitimate. And so he did facilitate the bribery in those manners. And the benefit to the conspiracy and specifically to Los Gatos was $7.5 million that it otherwise would not have made during that period of time. And your honor, was the 7.5 million from sales within the United States or was it from the international sales? And that's a good point, Judge Schreier. It was from the international sales, which Los Gatos would not have enjoyed if Mr. Sawyer did not remain as a main component of the conspiracy. And his involvement in the conspiracy included the bribery, which was a, he benefited from the bribery. He did benefit to the extent that they never would have had those sales, but for Mr. Sawyer's involvement and Sawyer would not have been involved unless the other co-conspirators agreed to go along with his domestic schemes, which included the bribery. Now I see I reserved five minutes and I'm addressing your questions. Is there additional questions that should be followed up at this point in time? Why don't we hear from the other side and then you've served, saved a fair amount of time. All right. Thank you. Do I reserve five or am I down to the three? Well, let's, let's get, let's get back five and then you'll make sure we, you've had a chance to say everything you need to say. Thank you, your honor. Good afternoon, your honors and council. May it please the court, Charles Yeager for Los Gatos Tomato and Stuart Wolf. I plan to start by talking about the second, the second error that council referenced regarding the one conspiracy. And I do mean to do that, use the balance of my time on that, but I did want to respond. I did want to mention something that council just said in response to, I believe judge Akuta's question about what direct evidence was there of participating in the bribery here. Council referred to defendants were involved in bribing craft foods. That situation had nothing to do with Los Gatos. That situation, as we've laid out in the briefs and as judge Mueller recognized involved Ingimar. But the, the question to me was, so Ingimar, who's a member of the CTG conspiracy. And the question is, well, did that conspiracy include a bribery component? And the district court at least thought that there was a genuine issue of material factors, whether Ingimar not only was aware of the bribery, but was participating in benefiting it. And that's really supports a theory that the CTG conspiracy included a bribery. Oh, your honor. You're correct that the evidence only relates to Ingimar. And that is what judge judge Mueller found. She carefully walked through the evidence and as opposed to Los Gatos, she found that she found evidence that from the circumstances surrounding the craft bid, that one could confer that Ingimar be a reasonable inference that Ingimar would understand that there was some kind of bribery involved that they were going to be guaranteed a $10 million contract. Your second, your second point sort of cuts to the one conspiracy argument, which is really the main argument that plaintiffs are advancing here. I just wanted to start with that. You know, basically because they have no evidence that Los Gatos or Stuart Wolf participated in the bribery or agreed to participate in the bribery, they have to conflate the two conspiracies, the price fixing conspiracy and the bribery conspiracy. And they want the court to address the idea that there's one conspiracy. And that for some reason, that's an issue of fact that a, that a court cannot decide as a matter of summary judgment, even if there's no evidence for it. That exact argument, the one conspiracy argument was made by the plaintiffs in the Matsushita case. And in footnotes seven of the decision, the court addresses that argument directly. Recall in Matsushita, there were several conspiracies alleged that involved price fixing and market allocation like here. But there was also a conspiracy involving predatory pricing. The predatory pricing conspiracy was the only conspiracy that could have harmed the plaintiffs who like Morningstar here was a competitor of the defendants. So that in Matsushita, the plaintiffs argued that all the conspiracies were part of one conspiracy. And the court said in its footnote seven, this argument is mistaken. However, one decides to describe the contours of the asserted conspiracy, whether it's one conspiracy or several respondents must show that the conspiracy caused them an injury for which the antitrust laws provide relief. That showing depends in turn on proof that petitioners conspired to price predatorily in the American market, since the other conduct involved in the alleged conspiracy cannot have caused such injury. So judge Mueller, can I ask you a question? And that is putting to one side, the definition of include that the bribery benefited the members of CTEG? Certainly not Los Gatos. The bribery did not benefit Los Gatos, as we've laid out in a lot of detail in our papers. And as Judge Mueller recognized, there's no connection for Los Gatos at all to the bribery. I'm not asking about whether there's a direct connection. I'm asking a different question. And that is, was there any benefit to the general members of the CTEG group from the bribery? And I'm putting aside whether we're defining as conspiracy or not, I'm talking just benefit. Certainly the benefit to SK foods from its own bribery conspiracy, they received a benefit from taking contracts away from Morningstar through its as well, or at least the district court. I thought there was a genuine issue material fact that Omar was also benefiting. So we got three people in this or three players in this conspiracy. And two of them were benefiting from the bribery. Is that right? Correct. And how does Morningstar not also benefit even if they're not actually participating? Well, Los Gatos isn't the funds were not as good as they were not fungible, they were not fungible funds that went into a pot that were shared by all the members of CTEG. Inga Martin got whatever contracts it got through potentially through the bribery. SK foods got the contracts it got through the bribery. Los Gatos did not receive any monies from those contracts didn't benefit from those contracts didn't get any business at all from the bribed customers. The with respect to sort of analyzing the whether these conspiracies are related, whether there's one conspiracy, it's not it's not a task. It's not a analysis that the court does in a vacuum. The court doesn't approach this case and say, well, let's what is all the evidence of these conspiracies? And are they related? Rather, it is relevant for determining the central issue for liability in the case, which is did Los Gatos agreed to participate in a conspiracy involving bribery? Did Los Gatos understand that it was agreeing to a conspiracy involving bribery, both on Sherman Act and Rico Clinton. And as as the court found below, there's there's just no evidence to demonstrate that Stuart Wolf or Los Gatos ever agreed to participate in a bribery conspiracy. But you do admit that Mr. Wolf knew of the bribery scheme, at least viewing the evidence in the light most favorable to Morningstar. The only Judge Mueller indicated in her order that at best, that testimony from Randy Rahal could imply awareness of this awareness of bribery. But but the Howard test is a two pronged test. It's awareness and intention to participate. The only evidence in the record, the only evidence that we reproduced in our briefs in total, that associates the word bribery with Los Gatos is that one page of testimony from Randy Rahal. And that testimony just taken on its face says that Morningstar's owner, Chris Ruffer, said something to Stuart Wolf that he believed that SK Foods was bribing customers. Mr. Wolf then had a conversation with Randy Rahal, where he said, Well, here are your bribing customers. And immediately, according to Rahal, he denied it. If Wolf is aware of the bribery scheme and does nothing, isn't that then a jury question as to whether he has intent? I don't believe there's any cases deciding that just awareness by itself satisfies the intent prong of the provision. In fact, if awareness by itself satisfies that, then you really don't have a two pronged test. You just have a one pronged test. If you show awareness, then you have got liability under RICO conspiracy. And that's not the way the courts analyze this. It's certainly not true that Mr. Wolf did nothing here. If the testimony is that SK Foods might be bribing customers, he certainly did not do nothing. He asked Mr. Rahal about it. He confronted him about it and said, I hear you're bribing customers. And he's told by Mr. Rahal, No, I'm not doing that. He denied it. And there was no further conversation about it. So I don't think there's any duty to investigate the information here that comes from the cases. Now, there's a degree of hypothetical, but if we conclude as the district judge did, that there's evidence from which the jury can permissibly conclude that Los Gatos or Mr. Wolf knew about the bribery. And if we knew, and I know, understand you can test this question, that in some fashion, the members of this group, CTEG, including Los Gatos, benefited from the bribery. Is that enough to get to the jury as to whether or not there's a conspiracy with respect to the bribery? I don't think so, your honor. I don't think if you just look at the RICO conspiracy claim, what's required is that Los Gatos was aware of the essential nature and scope of the enterprise and intended to participate in it. Well, what I'm saying is if Los Gatos knew of the bribery, and if Los Gatos benefited from the bribery, isn't that enough for the jury to infer in a civil case that they were part of a conspiracy to benefit from that bribery? I don't think so, your honor, because I think you're still missing the prong of intended to participate in the bribery. That's what I'm asking. That is to say, if they know about it, and if they're benefiting from it, and they do nothing to stop it, but there seems to be nothing that was done to stop it, why isn't that enough to allow the jury to infer intent? Perhaps on those facts, it is. What we have here is there's no benefit from the bribery. That to me is the key question then, yes. There's no benefit to the bribery here. The argument that I understand Morningstar to be making here is that by Scott Salyer saying CTEG, eventually Los Gatos was going to have profits from the export market, a perfectly legal activity that was being done by CTEG through the Commerce Department. That's entirely speculative. The only evidence, again, connecting Mr. Wolf to the word bribery was this April 2006 conversation with Randy Rahal. The record reflects that the sales that Los Gatos started to achieve through the export market didn't begin to ramp up until 2007, 2008, 2009, and then declined. The notion that Mr. Wolf from this one conversation with Mr. Rahal could have formed the idea that I'm going to just look the other way about bribery here because I'm going to profit in the export markets is entirely speculative. It's akin to the predatory pricing situation in the Matsushita case. It's implausible and it's speculative. I wanted to stay with the point about the one conspiracy. Matsushita's footnote seven directly relates to this. If there's no evidence of an intention to participate in a conspiracy involving bribery, there can be no liability in antitrust. With respect to the RICO conspiracy claim, you'll notice that Judge Mueller went through an analysis again. What is Morningstar's standing to proceed on a RICO conspiracy claim if its evidence is only regarding activities that did not harm it? Judge Mueller cited the Anza case and other cases for the proposition that a plaintiff doesn't have standing to proceed under RICO conspiracy if it has not been harmed by the activities. In this case, the court found that the only activity here that could have harmed Morningstar was the bribery. She therefore set out to establish whether or not there was any evidence that Moscondos knew about the bribery, was aware of its scope, and intended to participate. I see that I have very little time left. If the court has other questions for me, I'd like to make sure I address them. I think no further questions, so thank you very much, Mr. Yeager. Thank you. Mr. Campbell, you've got five minutes and I'd like to start with the question that I asked Mr. Yeager, and that is, help me understand why, in your view at least, Los Gatos is benefiting from the bribery. Thank you, Your Honor. The bribery was just one of the tools by which the essential nature and scope of the conspiracy was being accomplished. Again, it was to illegally manipulate the tomato market, and to their financial benefit, and to my client's harm. That's too general for me. I still don't understand how the bribery benefits Los Gatos. The bribery benefits Los Gatos in the fact that they knew that as part of the not to compete with each other for various customers, and that included the bribery customers, it benefited Los Gatos because Los Gatos was asked, as part of the broader conspiracy, to submit false bids to Kraft, which is another predicate act of mail fraud. And we also have evidence that, but for this nodding agreement that Mr. Sawyer, who was picked out because he had ill motive against my client, he was a known bad businessman. You're veering off now again. Let me ask again. I'm just trying to figure out what, if anything, we know about the bribery that would have benefited Los Gatos. Were any of the contracts that Los Gatos entered into procured by a bribe or tainted by bribes? Your Honor, the benefit of the bribery was to the conspiracy as a whole. And Los Gatos... You're still too general for me. So what is the precise mechanism by which Los Gatos is benefiting from the bribery? I'm still having trouble with that. All right. I will first explain what it did not do. Los Gatos did not bribe a customer. Los Gatos did not receive business directly from one of the bribed customers. What Los Gatos did receive was that the briberies was a component of the conspiracy and the conspiracy to engage in a variety of illegal activities, which included the bribery as one of the four illegal activities benefited Los Gatos to the tune of $7.5 million in profit. Did Los Gatos' $7.5 million in any way come from the bribery? That I don't understand. If it doesn't come directly from the bribery, but it comes from the conspiracy, and the bribery is just a tool of the conspiracy, whether it's one or two, and like the Supreme Court in Rossellini indicated that when there is a question whether or not there is two separate briberies, which your question implies is a separate price, illegal price fixing, and a bribery as two separate briberies, that is a question for the jury to decide whether it's one or whether the bribery is an element of the overarching essential nature of the conspiracy. Just like in Christensen, each participant did not need to know what exact illegal activities they were doing, but the benefit, and in Christensen, it was even a broader description of what the essential nature was. It was to engage in a variety of illegal activities to become profitable. In Christensen, it clearly said each participant did not need to know what the other participant was doing, and so the mere question of how did they benefit directly from the bribery begs the central question, which is a question of fact for the jury to determine whether or not it was one overarching conspiracy or two separate independent conspiracies, and if the court has additional questions, I'm available, but I see my time is up. Okay, thank you. Any further questions from the bench? Okay, thank both sides for your very useful arguments. Morningstar Packing versus Los Gatos Tomato Products now submitted for decision.
judges: W. Fletcher, Ikuta, Schreier